**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

BETA SOFT SYSTEMS, INC. a California corporation d/b/a US IT SOLUTIONS, INC.,

Plaintiff,

vs.

THE YOSEMITE GROUP, LLC, a Wyoming company, TERRANCE WILLIAMS, an individual, ANGELA WILLIAMS, an individual,

Defendants.

Case No.: 2:16-cv-01748-GMN-VCF

**ORDER**

Pending before the Court is the Motion to Dismiss, or alternatively, Motion for Summary Judgment, (ECF No. 12), filed by Defendant Terrance Williams ("Mr. Williams") and Defendant Angela Williams ("Ms. Williams") (collectively "Williams Defendants"). Plaintiff Beta Soft Systems, Inc. ("Plaintiff") filed a Response, (ECF No. 18), and Williams Defendants filed a Reply, (ECF No. 19). For the reasons discussed below, the Court **DENIES** Williams Defendants' Motion.

**I.    BACKGROUND**

This case arises out of a breach of contract dispute regarding a contract to hire professional candidates. Specifically, on September 5, 2013, Defendant Yosemite Group, LLC ("Yosemite") entered into a Master Services Agreement (the "Agreement") with Plaintiff. (Compl. ¶ 12, ECF No. 1). Plaintiff "is a certified development company that employs skilled IT experts working under various divisions with the company." (*Id.* ¶ 10). Yosemite "offers professional candidates as contractors, or contract to hire, to end clients." (*Id.* ¶ 11). Mr. Williams is the Managing Member of Yosemite and Ms. Williams is the Vice President of Technical Services for Yosemite. (*Id.* ¶¶ 4–5).

The Agreement allowed for Yosemite to enter into multiple purchase orders with Plaintiff, and these purchase orders listed the hourly rate of the consultants provided and stated that payment would be made to Plaintiff within thirty days. (*Id.* ¶¶ 14–15). Plaintiff continued to provide Yosemite invoices for its services up to November 4, 2015. (*Id.* ¶¶ 16–18).

Plaintiff asserts in its Complaint that the end client paid Yosemite, but Yosemite has failed to fully pay Plaintiff. (*Id.* ¶ 19). Specifically, Plaintiff states that "Yosemite has made payments of only $31,185.00" with "$125, 757.50 of owed monies" remaining. (*Id.* ¶ 20). Because of this, Plaintiff filed its Complaint on July 22, 2016, alleging breach of contract, conversion, fraud, unjust enrichment, and breach of the covenant of good faith and fair dealing. (*Id.* ¶ 1).

On September 23, 2016, Williams Defendants filed the instant Motion that seeks to dismiss Plaintiff's Complaint in its entirety as to the Williams Defendants only. (*See generally* Mot. to Dismiss ("MTD"), ECF No. 12).

## II.  **LEGAL STANDARD**

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the Court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III. DISCUSSION

Williams Defendants filed the instant Motion to Dismiss because "Yosemite has always been a separate and independent entity;" thus, Williams Defendants allege that they are precluded from individual liability. (MTD 2:14). Defendants wish to dismiss Plaintiff's claims for: (1) breach of contract; (2) conversion; (3) fraud; and (4) breach of the implied covenant of

good faith and fair dealing. (*See generally* MTD). The Court will address each argument in turn.

### A. Breach of Contract

A plaintiff in a breach of contract action must allege "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F.Supp.2d 913, 920–21 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (1865)). The parties do not dispute the existence of a valid contract, but rather dispute who the contract binds.

For a plaintiff to bring a breach of contract action against a defendant, the plaintiff and defendant must have a contractual relationship. *See Vargas v. Cal. St. Auto. Ass'n Inter–Ins. Bureau*, 788 F.Supp. 462, 464 (D. Nev.1992). Typically, only a party to a contract can breach it. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *W. States Constr., Inc. v. Michoff*, 840 P.2d 1220, 1225 (Nev. 1992). While no Nevada law speaks directly to this issue, other courts, including the United States Court of Appeals for the Ninth Circuit, have imputed contractual liability to an alter ego.

"Where the alter ego doctrine applies, . . . the two [ ] are treated as one for purposes of determining liability." *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1490 (9th Cir. 1983). The effect of applying the alter ego doctrine is that the corporation and the individual who dominates it are treated as one "so that any act committed by one is attributed to both, and if either is bound, by contract, judgment, or otherwise, both are equally bound." *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1241 (D. Nev. 2008). For example, the Ninth Circuit held that a breach of contract claim could proceed if a defendant was an alter ego or successor in interest to a party to the contract. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 803 (9th Cir. 2003). Additionally, the Nevada Supreme Court has implied the alter ego doctrine applies in a contractual context. *Bates v. Chronister*,

691 P.2d 865, 869 (Nev. 1984) (noting a nonparty who is an alter ego could function as a party to a contract for purposes of rescinding the contract); *Eaton v. J.H., Inc.*, 581 P.2d 14, 18 (Nev. 1978) (holding that because the defendant's personal liability under the contract was not contested, it was unnecessary for the court to address whether he would also be liable under an alter ego theory).

The Williams Defendants assert that "[c]laims for alter ego cannot be applied as against a limited liability company . . . such as Yosemite." (MTD 6:18–19). Williams Defendants continue that Plaintiff's breach of contract cause of action should be dismissed because the Williams Defendants cannot be held liable for their LLC pursuant to the Nevada Legislature's failure to codify veil piercing as to LLCs. (*See* MTD 6:24–28).

Indeed, the Nevada Supreme Court has not expressly held that the laws for piercing the corporate veil under the alter-ego doctrine apply to LLCs, but it has applied those rules in the LLC context, "assum[ing] without deciding that" the corporate analysis applies. *See Webb v. Shull*, 270 P.3d 1266, 1271 n.3 (Nev. 2012); *see also JSA, LLC v. Golden Gaming, Inc.*, 2013 WL 5437333, *5 (Nev. Sept. 25, 2013) (citing *Webb*, again assuming without deciding that the doctrine applies, and holding that "the district court correctly determined that the corporate veil should not be pierced in" that case). The Court will do the same here in assuming but not deciding that the alter ego principles that permit courts to pierce corporate veils also permit courts to pierce LLC veils in Nevada. *See Pharmaplast S.A.E. v. Zeus Med. Holdings, LLC*, 2017 WL 985646, at *3 (D. Nev. Mar. 14, 2017).

In holding so, the Court will now determine whether Williams Defendants were alter egos of Yosemite. An alter ego showing in Nevada requires that (1) the entity is "influenced and governed by" the member; (2) there is "such unity of interest and ownership" that the LLC and the member are inseparable from each other; and (3) adherence to the fiction of a separate entity "would, under the circumstances, sanction a fraud or promote a manifest injustice."

*Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008) (quoting *Ecklund v. Nevada Wholesale Lumber Co.*, 562 P.2d 479, 479–80 (Nev. 1977)). Although "there is no litmus test for determining when the corporate fiction should be disregarded," factors indicating the existence of an alter ego include: "(1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *Id.* at 847.

Here, Plaintiff sufficiently alleges that Williams Defendants are alter egos of Yosemite. Plaintiff alleges that Williams Defendants "are the only shareholders and members of, or are the only shareholders and members responsible for the management and operation of Yosemite, and that such ownership and power allows the [Williams] Defendants to dominate and control Yosemite." (Compl. ¶ 6(f)). Moreover, Plaintiff asserts, *inter alia*, that Yosemite was undercapitalized, that Williams Defendants treated Yosemite assets as their own, and that Williams Defendants "directed assets to and from Yosemite to themselves and others." (*Id.* ¶ 6). As such, Plaintiff has sufficiently pled that Williams Defendants are alter egos of Yosemite. Because Williams Defendants are now parties to the contract, the Court will analyze Plaintiff's breach of contract claim as to the Williams Defendants.

Notably, Williams Defendants' Motion to Dismiss relies solely on them not being parties to the contract because only Yosemite entered into the contract. (MTD 8:10–14). As discussed *supra*, however, the Court is not persuaded by this argument. Moreover, Plaintiff sufficiently alleges a breach of contract claim by stating that it entered into agreements with Defendants, that "Defendants breached the Agreement[ ] by refusing to pay for the services provided by [Plaintiff]," and that Plaintiff "has been damaged in an amount of at least $125,757.50." (Compl. ¶¶ 35–40). Accordingly, the Court denies Williams Defendants' Motion for the breach of contract claim.

**B. Conversion**

Conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights." *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (quoting *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958)). "Conversion generally is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value." *Edwards v. Emperor's Garden Restaurant*, 130 P.3d 1280, 1287 (Nev. 2006). To be the subject of a conversion claim, "the money, or the specific amount of money, [must be] identifiable, such as where it is earmarked, or set aside in a separate account, or otherwise identifiable." *Hester v. Vision Airlines, Inc.*, 2011 WL 856871, *3 (D. Nev. Mar. 9, 2011).

Here, Plaintiff alleges that it has "clear legal ownership and right to possession of the $125,757.50 owed to it." (Compl. ¶ 42). Plaintiff continues "Defendants wrongfully misappropriated these funds for their own benefit, and to Plaintiff's detriment, in violation of Plaintiff's rights." (*Id.* ¶ 43). Defendants contend that Plaintiff's conversion cause of action should be dismissed because "the contract was between Plaintiff and Yosemite, thus any claims regarding ownership of funds is between Plaintiff and Yosemite only." (MTD 9:2–3) (emphasis omitted). However, an alter ego theory of liability does not only apply to a breach of contract claim. Accordingly, because Plaintiff has sufficiently pled a theory of conversion, the Court denies the Motion in regards to this claim.

**C. Fraud**

Under Nevada law, the elements of a common law fraud cause of action are: (1) the defendant made a false representation; (2) the defendant knew or believed the representation was false or the defendant had an insufficient basis for making the representation; (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance upon the

misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) damage to the plaintiff resulted from such reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992); *see also Daou v. Abelson*, 2014 WL 938508, at *4 (D. Nev. Mar. 10, 2014).

Here, Plaintiff alleges that "Defendants used false and misleading statements to induce [Plaintiff] to continue providing the consulting services, even after Defendants had no intention of paying for the services in the full." (Compl. ¶ 47). This allegation satisfies the first three elements of asserting a cause of action for common law fraud. Plaintiff continues "[Plaintiff] reasonably and foreseeably relied upon Defendants [sic] false and misleading statements and representations" and "suffered damages as a result." (*Id.* ¶¶ 48–49). These allegations satisfy the fourth and fifth elements for fraud.

Moreover, Plaintiff specifically alleges the false representations are: "[f]alse representations by Ms. Williams that the unpaid invoices were subsequently approved for payment;" "[f]alse representations that the unpaid invoices would be paid in a lump sum;" "[f]alse representations by Ms. Williams that the Defendants would pay the unpaid invoices by a payment plan no later than April;" and "[f]alse representations by Ms. Williams, through counsel, that Defendants intended to pay the amount owed in full." (*Id.* ¶ 50). Although Williams Defendants argue that Plaintiff's fraud claim fails "due to the lack of facts and evidence to support each of the alleged false representations," at the motion to dismiss stage, Plaintiff need only allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Plaintiff's Complaint sufficiently pleads fraud and Williams Defendants' Motion to Dismiss fraud is denied.

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing

To survive a Motion to Dismiss, a claim for breach of the implied covenant of good faith and fair dealing must: (1) identify the contract that is the basis for the claim; (2) identify the

conduct that allegedly constituted the breach of the covenant; (3) indicate that this conduct was deliberate; and (4) show how the alleged breach caused damage. *See Morris v. Bank of Am. Nev.*, 886 P.2d 454, 457 (Nev. 1994).

Here, Plaintiff alleges that "the Agreement between [Plaintiff] and Defendants was a valid and binding contract" and that by Defendants providing numerous false representations, they "unfairly frustrated [Plaintiff's] right to receive the benefits of the [Agreement]" and "breached the implied covenant of good faith and fair dealing." (Compl. ¶¶ 58–60). Williams Defendants assert that "Plaintiff's theory fails because as set forth above, the Williams Defendants were not parties to the contract." (MTD 11:25–26). However, Williams Defendants' argument fails because, as discussed *supra*, the Court finds that at this stage, Plaintiff has sufficiently alleged that the Williams Defendants can be held liable under an alter-ego theory. As such, the Court denies Williams Defendants' Motion to Dismiss.[1]

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants Terrance Williams and Angela Williams's Motion to Dismiss or, alternatively, Motion for Summary Judgment, (ECF No. 12), is **DENIED**.

**DATED** this __25__ day of August, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge

---

[1] Because Williams Defendants' Motion fails under a Rule 12(b)(6) analysis, the Court only construes Williams Defendants' Motion as a Motion to Dismiss and not as a Motion for Summary Judgment.